UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.

People of the State of New York, by LETITIA JAMES,            **COMPLAINT**
Attorney General of the State of New York,

                              Plaintiff,
        -against-

BEVELYN BEATTY and EDMEE CHAVANNES,

                             Defendants.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. Plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), brings this action to end the obstructive, threatening, harassing, and violent activity by the Defendants, Bevelyn Beatty and Edmee Chavannes, at Planned Parenthood of Greater New York's Manhattan Health Center and prevent Defendants from engaging in these unlawful activities in the future.

2. The Manhattan Health Center ("the Center") is an outpatient surgery center located at 26 Bleecker Street in New York City that provides abortion care, as well as a full array of medical services for women.

3. Beginning on or around February 2019, Defendants began protesting on Fridays, and then on Saturdays at the Center. At one point, they protested at the Center every Saturday for several months in a row, showing up around 7 a.m. and leaving around 11 a.m.

4. On these occasions, one of the Defendants would typically stand right at the door to the Center, inches away from a volunteer escort who was responsible for opening the door, and

1

the other would follow patients and staff and yell at them at close range as they passed by. Defendants also pounded on and screamed through the glass windows after patients went inside.

5. Although Defendants stopped coming to the Center for a few weeks in January and February, they resumed their activities in March 2020, during the first peak of the COVID-19 pandemic in New York City. At that point, their behavior became even more intimidating and disruptive, as Defendants' conduct presents a direct risk to the health and safety of patients and staff.

6. The ongoing COVID-19 pandemic is the greatest public health emergency in more than a century. New York State has been in a state of emergency since March 7, 2020, with New York City at its epicenter. To date, the virus has killed over 460,000 Americans, including more than 36,000 New Yorkers, which is more than ten times the number killed in 9/11.[1] In response, Governor Cuomo has issued a series of Executive Orders to reduce the spread of the virus by minimizing in-person contact, including requiring social distancing, temporarily banning gatherings, and mandating that all individuals over the age of two to cover their nose and mouth with a mask or cloth face covering in public.[2]

7. Rather than comply with these orders, Defendants have instead weaponized the threat of the virus to further intimidate and interfere with the Center's operations. Defendants refuse repeated requests from patients, staff, and escorts to maintain their distance and wear masks and continue to accost people entering the Center at close range, while mocking staff and escorts' mask usage and desire to avoid close contact with them. Defendants' conduct purposely puts

---

[1] See CDC COVID Data Tracker, Centers for Disease Control and Prevention, available at https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days; Fatalities, New York State Department of Health, available at https://on.ny.gov/2MxLRsJ.
[2] New York Executive Order ("EO") Nos. 202-202.82, including EO 202.17, issued on April 15, 2020, all of which are available at: https://www.governor.ny.gov/executiveorders.

patients, staff, and escorts in fear for their health and safety. Ultimately, they force patients and staff to risk exposure to the virus in order to obtain or provide reproductive health services.

8. In May 2020, while thousands of New Yorkers were still testing positive every day, the police provided the Center with barricades to create a narrow path to protect patients and staff from exposure to the virus as they entered the clinic to go to work or to medical appointments. But Defendants have refused to respect these basic safety precautions put in place by law enforcement and instead forced their way inside the barricades, elbowing and shoving aside escorts and staff who tried to stop them, and putting themselves directly in the path between patients and the clinic's door.

9. Defendants' behavior was at its most violent, obstructive, and threatening at the end of June, during a large-scale anti-abortion protest they organized at the Center. In promoting the event online, Defendant Beatty called on others to join her and "declare WAR on PLANNED PARENTHOOD!"

10. That weekend, Defendant Beatty slammed a staff member's hand in the door, causing her to need x-rays; repeatedly shoved a clinic volunteer attempting to enter the clinic; slapped a different volunteer in the face; and threatened to knock an escort unconscious. Defendant Chavannes screamed threats in a staff member's face while maskless, bending the staff member backwards over the barricades until police intervened to pull Chavannes off; and both Defendants physically blocked the main and side entrances to prevent patients and staff from getting into the Center. Throughout the weekend, they purposefully came into close, unmasked contact with staff and patients in the middle of the pandemic and taunted escorts and staff who asked them to cover their faces and keep their distance.

11. On at least two occasions after that, including as recently as this past weekend, Defendants returned to the Center and continued to position themselves directly in front of the entrance; follow and harass patients and staff within fifteen feet of the clinic; pound on the windows and scream inside the clinic; and yell at people from inches away without masks on, refusing all pleas for social distancing.

12. Their behavior has made access to the Center unreasonably hazardous and forced patients to choose between obtaining reproductive health care and protecting themselves from exposure to the virus.

13. To prevent any further illegal and harmful conduct, the OAG brings this action for injunctive relief and damages pursuant to the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE"), the New York Clinic Access Act, N.Y. Civ. Rights Law § 79-m ("NY Clinic Access Act")[3], and the New York City Access to Reproductive Health Care Facilities Act, N.Y.C. Admin. Code §§ 8-803 and 8-804, ("NYC Clinic Access Act").

14. The OAG seeks to enjoin Defendants, as well as all those acting in concert with them, from physically obstructing anyone entering the Center; using force against anyone entering or leaving the Center; yelling or shouting into the Center or banging on its windows; threatening anyone entering or leaving the Center; refusing to comply with Executive Order 202.17 or other applicable order while protesting outside the Center; and entering a buffer zone around the entrance to the Center, identical to that which was established in *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 460 (S.D.N.Y. 2006).

---

[3] The NY Clinic Access Act is codified in two parts of New York law: the Penal Law defines the prohibited conduct, N.Y. Penal Law §§ 240.70-240.71, and the Civil Rights Law authorizes the Attorney General to seek an injunction against that conduct, N.Y. Civ. Rights Law § 79-m.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to adjudicate Plaintiff's state and city law claims.

16. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth herein have occurred and will occur in this district.

**PARTIES**

**Plaintiff**

17. Plaintiff, the People of the State of New York, is represented by its chief law enforcement officer, Letitia James, Attorney General of the State of New York. Pursuant to FACE and the NY Clinic Access Act, the Attorney General is authorized to commence a civil action where, as here, the Attorney General has reasonable cause to believe that persons within the State of New York may be injured by conduct that constitutes a violation of those laws. Further, pursuant to New York Executive Law § 63(1), as well as the Attorney General's inherent *parens patriae* authority, the Attorney General is authorized to commence legal action to enjoin ongoing violations of the NYC Clinic Access Act.

**Defendants**

18. Defendant Beatty has a very public presence as an anti-abortion advocate. She has posted online that she had three abortions of her own, after which she found religion while in jail. Since then, she has posted videos of herself entering a Planned Parenthood clinic in Pennsylvania under false pretenses, obstructing a Planned Parenthood clinic in Camden New Jersey, where she defied orders to move away by the police, and getting arrested at the Manhattan Health Center.

Indeed, Defendant Beatty has filmed and publicly posted many of the violations of law described below.

19. Defendant Beatty also has a public history of violent activity, which is known to the Center's security staff. In 2018, Beatty was arrested in Maine for assault, after she was filmed repeatedly hitting another woman in a nightclub; she has bragged about the severity of this assault and threatened to do the same to a clinic escort. She has also posted videos of herself firing guns, announcing that she intends to make it a weekly practice.

20. Defendant Edmee Chavannes has repeatedly engaged in obstructive, intimidating, and harassing activity at the Manhattan Health Center alongside Defendant Beatty. Like Defendant Beatty, Defendant Chavannes refuses to wear a mask or follow social distancing protocols at the Center, where she screams loudly and continuously at close range in the faces of patients and staff and pounds on the glass windows of the clinic and yells at patients awaiting their doctors' appointments inside.

## LEGAL STANDARD

21. Under FACE, 18 U.S.C. § 248(a)(1), it is illegal to use force, threat of force or physical obstruction, intentionally intimidate and/or interfere with, or attempt to intimidate and/or interfere with, a person because that person has obtained or provided, or seeks to obtain or provide, reproductive health services.

22. Pursuant to the NY Clinic Access Act, N.Y. Penal Law § 240.70(l), it is illegal to use force, threat of force or physical obstruction, intentionally intimidate, and/or interfere with, or attempt to intimidate and/or interfere with, a person because that person has obtained or provided, or seeks to obtain or provide, reproductive health services, or in order to discourage that person from obtaining or providing reproductive health services.

23. Under the NYC Clinic Access Act, N.Y.C. Admin. Code §§ 8-803 and 8-804, it is illegal for any person to interfere with access to a reproductive health-care facility in so far as they engage in any of the following conduct: (1) knowingly physically obstructing or blocking another person from entering into or exiting from the premises of a reproductive health-care facility by physically striking, shoving, restraining, grabbing, or otherwise subjecting a person to unwanted physical contact, or attempting to do the same; (2) knowingly obstructing or blocking the premises of a reproductive health-care facility, so as to impede access to or from the facility, or attempt to do the same; (3) following and harassing another person within fifteen feet of the premises of a reproductive health-care facility; (4) engaging in a course of conduct or repeatedly committing acts within fifteen feet of the premises of a reproductive health-care facility when such behavior places another person in reasonable fear of physical harm, or attempting to do the same; (5) physically damaging a reproductive health-care facility so as to interfere with its operation, or attempting to do the same; or (6) knowingly interfering with the operation of a reproductive health-care facility, or attempting to do the same.

## FACTUAL ALLEGATIONS

### I. Planned Parenthood Manhattan Health Center

24. For more than 100 years, Planned Parenthood has delivered reproductive health care, sex education, and medical information to millions of women and men worldwide. The Manhattan Health Center (or the "Center") is located in a residential neighborhood at the corner of Bleecker and Mott Streets and provides comprehensive gynecological services, including routine check-ups, birth control, pregnancy care and testing (like breast, cervical, testicular, and prostate cancer screening), vaccines, and abortions. The Center also provides STD and HIV testing, counseling, and treatment.

25. The Manhattan Health Center's entrance is directly at the edge of a public sidewalk. The Center's entrance door is approximately 30 feet south of the edge of Bleecker Street and opens directly onto Mott Street. The recovery and discharge area of the Center and additional waiting areas are directly above Mott Street on the second floor.

## II. Defendants' Violations of Law

26. Beginning approximately two years ago, Defendants have repeatedly interfered with the operations of the Manhattan Health Center by obstructing the entrance to the Center, following and harassing patients, staff, and escorts, and pounding on the Center's windows and front door and screaming at patients inside.

27. Defendants' has conduct worsened since the COVID-19 crisis, as they now threaten patients, staff, and escorts with exposure to the virus. Specifically, since the pandemic began, Defendants closely approach patients, staff, and escorts in contravention of social distancing protocols while yelling, chanting, and singing, and they reject all requests to back up or cover their faces.

28. Defendants regularly put their unmasked faces inches away from patients and staff while yelling at them, and at least once, Defendant Chavannes screamed so closely at a staff member entering the building that her spit hit him in the face. Defendants' routine harassment of patients and staff at the Center, while intimidating and disturbing under normal circumstances, has led to additional physical obstruction of the Center during the pandemic, where Defendants intend to—and do—make the entrance to the Center unreasonably difficult and hazardous.

29. Defendants have also ignored or thwarted efforts by police to ensure safety at the Center during the pandemic. Beginning in May 2020, pursuant to an NYPD Operations Order that instructs commanding officers to create frozen zones around clinics as necessary to ensure

8

safe, unobstructed access to clinics in situations where less restrictive means will likely be ineffective,[4] the police set up metal barricades outside the entrance to the Manhattan Health Center to create six feet of distance between patients and protesters in an attempt to prevent virus transmission.  Rather than stay outside of the barricades, the Defendants have shoved their way inside them, climbed over them, and forcibly grabbed the barricades out of the hands of escorts and staff, throwing the barricades into the street while shouting at the escorts and staff with no masks on and refusing all requests to social distance.

30. On one occasion, on May 30, 2020, the police arrested Defendants for their refusal to heed orders to stay outside of the barricades.  Yet within an hour and a half of their arrest, Defendants returned to the Center, shouting that the police could not stop them.  Defendants immediately resumed following people at close range and shouting at patients and staff in contravention of social distancing and mask protocols.

31. During the weekend of June 19 and 20, 2020, a large protest was organized by Defendants in collaboration with an anti-abortion group called Love Life.  Love Life is affiliated with Flip Benham, a high-profile anti-abortion activist, who was convicted of stalking an abortion doctor in 2011.

32. That weekend, Defendants made threats of violence to escorts and staff, shoved and slapped escorts, violently injured a staff member; and physically blocked the main and side entrances in an attempt to prevent patients and staff from getting into the Center.  They conducted all of their activities without masks or face coverings, as usual, and taunted escorts and staff who asked them to cover their faces and keep their distance.

---

[4] Guidelines for Demonstrations at Reproductive Health Care Facilities, Operations Order No. 40, NEW YORK POLICE DEPARTMENT (July 13, 2016).

33. Defendants returned to the Center at least twice more, including as recently as this past Saturday, and they positioned themselves directly in front of the entrance; yelled at escorts and patients from inches away, while maskless; followed and harassed patients within fifteen feet of the Center; and screamed through the glass at patients inside.

   a. **<u>Defendants act with the requisite intent to intimidate and interfere with patients and staff because they seek or provide reproductive health services</u>**

34. Defendants have made clear their intention to shut down the Center through harassment, obstruction, and intimidation. On a live video feed Beatty streamed on Facebook on June 19, 2020, she announced, "This is war. We are called to destroy the works on the enemy. And that's what we doing right now. That's what we doing right now. We are going to destroy the works of the enemy." A few minutes later, she declared, "We are going to terrorize this place. And I want the manager to hear me say that…We are going to terrorize this place. More people are coming. More and more and more…We are going to terrorize you so good that your business will be over, Mama."

35. Similarly, Defendants have broadcast their intention to physically obstruct access to the Center. On June 20, 2020, Defendant Chavannes was recorded shouting, "Y'all don't know what's coming. Y'all don't know what's coming. We're going to block up this whole thing. We're going to block this door. We're going to block this door. Ain't nobody going into that building today."

36. On the same day, in a video livestreamed to her Facebook page, Beatty said to the camera while standing in front of the door, "We not moving. We standing here so I guess no women will be coming in for abortions today. It's a warzone."

10

37. Defendant Beatty proudly characterized her actions that day as a violent attempt to inhibit access to abortions, stating "We are violently pursuing the kingdom of God. Violently pursuing."

  b. **Defendants have used force to intimidate and interfere with patients and staff entering the Center.**

38. On multiple occasions, Defendants have shoved and body-checked escorts and staff in an attempt to position themselves as close as possible to patients and staff entering the Center. Defendant Beatty in particular has forced her way into a spot directly in front of the entrance, using her hips, elbows, and shoulders to push aside escorts and staff.

39. On June 20, 2020, Defendant Beatty took a running start and rammed her entire body into several escorts who had linked arms in an attempt to block her from entering the police barricades. Meanwhile, Defendant Chavannes took hold of the barricades and began yanking them out of the hands of escorts and staff and throwing them into the street while screaming at the escorts and staff, maskless.

40. Later that day, Beatty leaned against the door to the Center and used all her weight to keep it closed, while staff and escorts were attempting to open it. In doing so, she slammed the door shut on the hand of a staff member, who cried out, "She's crushing my hand!" Beatty saw and heard this but did not move. As the staff member continued to try to force the door open, Beatty's weight repeatedly slammed the door onto the staff member's hand, which became bruised and swollen and required x-rays.

41. Minutes after crushing the staff member's hand, Beatty repeatedly shoved a clinic volunteer who was attempting to enter the Center, one time with so much force that the volunteer stumbled backwards over herself.

42. Later that same morning, Beatty slapped an escort in the face and had to be held back by another volunteer.

### c. **Defendants have physically obstructed patients entering the Center**

43. Defendants have regularly positioned themselves right at the door to the Center to make it unreasonably difficult for staff and patients to enter. As a result, patients and staff have had to squeeze past and maneuver around them to get inside.

44. Their physical obstruction has become worse during the pandemic, as their actions leave no opportunity to maintain social distancing. No matter how often they are asked, Defendants refuse all requests to keep their distance, mocking escorts and staff who made the requests. Likewise, Defendants refuse to wear masks and mock escorts and staff for wearing masks and asking them to do the same. Defendants' insistence on violating social distancing protocols and refusal to respect the safety concerns of people entering the Center creates unreasonably difficult and hazardous conditions for those seeking to access or provide reproductive health services.

45. One Saturday in early June 2020, Defendant Chavannes screamed so closely in the ear of a staff member who was trying to walk into the Center to go to work that some of her spit hit him on the head.

46. On June 20, 2020, Defendants positioned themselves right in front of the door. Due to Defendants' obstruction of the main entrance, patients had to enter the Center through a side door, which is the clinic's administrative entrance. Defendants then directed other anti-abortion protesters to block the administrative entrance as well, while they themselves remained in front of the main entrance.

12

47. Later that day, Defendant Beatty moved to stand in front of the administrative entrance, leaned against the door, and, at one point, sat directly in front of the doorway with her back against the door. When a patient arrived at the administrative entrance, Beatty refused staff members' requests to move aside from her position against the door, announcing, "They blocked that door, we're standing at this door." An escort had to reach behind Beatty and pull the door open before she finally moved, allowing the patient to enter.

48. As recently as February 6, 2021, Defendants have positioned themselves at the front entrance to the clinic and stood directly in front of the door, such that patients entering the building had to squeeze past them to get inside, while Defendants yelled at them from inches away, maskless.

   a. **Defendants have made threats of force to intimidate and interfere with patients and staff entering the Center**

49. Defendants have repeatedly screamed abuse at patients and staff entering the Center from close range, while declining to wear masks. On the weekend of June 19 and 20, 2020, their verbal abuse and threatening acts included explicit threats of force.

50. On June 19, 2020, Defendant Chavannes began screaming at a staff member who had opened the door to allow another staff member to enter the Center. Defendant Chavannes backed the staff member up against the barricade, causing the staff member to bend backwards over it, and shook her finger in staff member's face and screamed, maskless, from inches away, "Do not touch me again! Do you hear me?!" She did not stop until multiple police officers pulled her away.

51. The following day, Defendant Beatty threatened to knock an escort unconscious. In talking about the assault she committed in Maine, which led to her arrest and incarceration, she bragged, "With one hit, I hit her so hard that she was asleep on the floor… If I could rewind

13

time, I'd do it again." She proceeded to threaten to do the same thing to the escort, saying, "If you put your hands on me, you might end up on the floor asleep for a couple minutes." When the escort observed, "That's a threat," Defendant Beatty agreed enthusiastically, "Yeah!"

    b. **<u>Defendants routinely follow and harass patients and staff within fifteen feet of the Center</u>**

52. On numerous occasions, Defendants have followed patients and staff and screamed at them at close range, despite their targets' explicit requests for Defendants to leave them alone. Even once a patient or staff member makes it inside, Defendants continue to pound and scream against the glass windows.

53. Defendants' harassment has worsened during the COVID-19 pandemic. They continue to scream closely at staff and patients, while refusing to wear masks or face coverings of any kind. Several volunteer escorts and patients have complained about feeling unsafe, given Defendants' close proximity to their faces. When they voice their discomfort to Defendants themselves, Defendants refuse to move back, and instead taunt their targets about their concerns.

    a. **<u>Defendants have knowingly interfered with the operation of the Center by banging on the glass windows and screaming inside</u>**

54. Defendants have repeatedly attempted to disrupt the operations of the Center by pounding on the glass and screaming through the window or door, even after the staff or patient made it inside the building.

55. On at least one occasion, on January 1, 2020, the Manhattan Health Center had to relocate patients from the waiting room into the clinic before it opened because Defendants were screaming so loudly through the glass.

56. Since the pandemic began, the Center has set up a triage area where patients' temperatures must be taken to screen for COVID-19 prior to entering. The staff finds it difficult to talk to patients about symptoms or risk factors due to Defendants' loud screaming.

57. Clinic staff began to play loud music on a regular basis, in order to drown out Defendants' screaming and banging on the windows and to help patients remain calm and focused on their recovery. Defendants' yelling is so loud that it can be heard in the offices up on the seventh floor on the other side of the building.

### III. Harm Caused by Defendants' Unlawful Conduct

58. Defendants' unlawful conduct—including their physical obstruction of the Center entrance, acts of force, and threats of force, as well as their pattern of following and harassing patients, staff, and escorts and banging on the windows of the clinic and screaming inside the door—interfere with individual patient care and thus harm women seeking reproductive-health services.

59. By using physical obstruction, acts of force, threats of force, and harassment, Defendants have attempted to intimidate and interfere with individuals who obtain or seek to obtain reproductive health care, as well as those who provide or seek to provide the same. Defendants have caused and will continue to cause patients, staff, and volunteer escorts at the Center irreparable harm and emotional distress by making access to the clinic unreasonably difficult.

60. Defendants' violations of law have been willful and malicious and in reckless and wanton disregard of Plaintiff's rights under the law.

61. Plaintiff has no adequate remedy at law.

## CAUSES OF ACTION

### First Cause of Action
### Violations of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(1)

62. The OAG re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this complaint as though fully set forth herein.

63. Defendants have violated federal law by intentionally using force, making threats of force and causing physical obstruction to the Manhattan Health Center, in order to intimidate and interfere with, and attempt to intimidate and interfere with, Manhattan Health Center patients because the patients have obtained or sought to obtain reproductive health services, and with Manhattan Health Center staff and volunteer escorts because those persons have sought to provide or provided reproductive health services.

64. Defendants have repeatedly violated federal law by intentionally using force, making threats of force and causing physical obstruction to Manhattan Health Center, in order to intimidate and interfere with, and attempt to intimidate and interfere with, Manhattan Health Center patients in order to discourage patients from obtaining reproductive health services, and Manhattan Health Center staff and volunteer escorts from providing such reproductive health services.

65. As a result of Defendants' violations, Manhattan Health Center patients, escorts and staff suffered harm.

66. The OAG seeks declaratory and injunctive relief remedying these ongoing violations.

**Second Cause of Action**
**Violations of the NY Clinic Access Act,**
**N.Y. Penal Law § 240.70(l)(a)-(b)**

67. The OAG re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this complaint as though fully set forth herein.

68. Defendants have repeatedly violated New York State law by intentionally causing physical obstruction, engaging in acts of force, and making threats of force, in order to intimidate and interfere with, and to attempt to intimidate and interfere with, Manhattan Health Center patients because the patients have obtained or sought to obtain reproductive health services, and with Manhattan Health Center staff and volunteer escorts because those persons have sought to provide or have provided reproductive health services.

69. Defendants have repeatedly violated New York State law by intentionally causing physical obstruction, engaging in acts of force, and making threats of force, in order to intimidate and interfere with, and to attempt to intimidate and interfere with, Manhattan Health Center patients in order to discourage patients from obtaining reproductive health services, and Manhattan Health Center staff and volunteer escorts from providing such reproductive health services.

70. As a result of Defendants' violations, Manhattan Health Center patients, escorts and staff suffered harm.

**Third Cause of Action**
**Violations of the NYC Clinic Access Act,**
**N.Y.C. Admin. Code §§ 10-1002, 10-1003**

71. The OAG re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this complaint as though fully set forth herein.

72. Defendants have repeatedly violated New York City law by physically obstructing and blocking individuals from entering or exiting the Manhattan Health Center by shoving, body-checking or otherwise subjecting individuals to unwanted physical contact, or attempting to do the same; obstructing and blocking the entrance to the Center to impede access to and from the facility, or attempting to do the same; following and harassing clinic patients, staff, and escorts within fifteen feet of the Manhattan Health Center; engaging in a course of conduct within fifteen feet of the Manhattan Health Center that places patients, staff, and escorts in reasonable fear of physical harm, or attempting to so; and knowingly interfering with the operation of a reproductive the Manhattan Health Center by, among other things, banging on the windows and screaming inside.

73. As a result of Defendants' violations, Manhattan Health Center patients, escorts and staff suffered harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgment and order:

A. declaring that Defendants' actions as described above violate FACE, the NY Clinic Access Act, and the NYC Clinic Access Act;

B. permanently enjoining Defendants from violating FACE, the NY Clinic Access Act, and the NYC Clinic Access Act, and ordering injunctive relief necessary and appropriate to remedy Defendants' past violations of law and to ensure that Defendants do not physically obstruct or use force or threats of force to injure, intimidate, discourage and/or interfere with or attempt to injure, intimidate, discourage and/or interfere with persons who are seeking to obtain or provide reproductive health care at Manhattan Health Center, and to

create a buffer zone around the Center's premises, extending out from the buildings themselves and encompassing all clinic entrances, where no protest activity may occur;

C. directing each Defendant to pay statutory or compensatory damages for each violation as authorized by FACE, 18 U.S.C. § 248(c)(3)(B) and N.Y.C. Admin. Code §§ 8-804(2) and 8-807(c);

D. directing each Defendant to pay civil penalties as authorized by FACE, 18 U.S.C. § 248(c)(3)(B);

E. awarding Plaintiff reasonable costs and expenses incurred in the prosecution of this action;

F. retaining jurisdiction of this matter to ensure full, adequate, and effective implementation of the relief ordered by the Court; and

G. awarding Plaintiff such additional relief as is just and proper.

Dated: New York, New York
February 9, 2020

LETITIA JAMES
Attorney General of the State of New York

By: _/s/ Sandra Pullman_____
Sandra Pullman
Senior Counsel
Sandra.Pullman@ag.ny.gov

Heather McKay
Assistant Attorney General
heather.mckay@ag.ny.gov
(*pending admission to the SDNY*)

Office of the New York State Attorney General
Civil Rights Bureau
28 Liberty St., 20th Floor
New York, NY 10005
 (212) 416-8250